IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL CASE NO. 3:18-cv-00575-MR

JENNIFER ANN JASMAINE,[1]    )
                             )
        Plaintiff,            )
                             )
vs.                          )   **MEMORANDUM OF**
                             )   **DECISION AND ORDER**
                             )
GREGORY HAYNES, et al.,       )
                             )
        Defendants.           )
_____ )

**THIS MATTER** comes before the Court on Defendants' Motions to Dismiss[2] [Docs. 28, 31]. Also pending is Defendant Young's Motion for Extension of Time to Answer the Complaint [Doc. 25].

**I.   BACKGROUND**

The incarcerated Plaintiff, proceeding *pro se*, filed this action pursuant to 42 U.S.C. § 1983 on October 16, 2018, alleging that she received deliberately indifferent medical and mental health care at the Lanesboro Correctional Institution.[3] The Defendants are: Gregory D. Haynes, a doctor

---

[1] Also known as Duane Leroy Fox.

[2] Although Defendant Judd has not been served, Defendants Copple, Grand, Lassiter, and Young assert that their Motion to Dismiss applies equally to him. [See Doc. 32 at 2 n.1].

[3] Houston v. Lack, 487 U.S. 266 (1988) (establishing the prisoner mailbox rule); see Lewis

at Lanesboro C.I.; Mr. Judd, a psychologist at Lanesboro C.I.; Kenneth Lassiter, Director of the North Carolina Department of Public Safety ("NCDPS"); Kimberly Grand, Executive Director of NCDPS; Sherri Copple, NCDPS Regional Nurse; and Reuben Young, Interim Chief Deputy Secretary of NCDPS.

Plaintiff alleges that she required, and was approved for, physical therapy following surgery on her left foot but that the therapy was delayed which, in turn, delayed surgery on her right foot. Plaintiff claims that Defendant Haynes disregarded her serious medical need for physical therapy on her left foot and that her right foot is going numb as a result of the delay. Plaintiff further alleges that Defendant Judd disregarded her "serious mental health diagnosis"[4] and a mental health level of 3 for which certain unnamed "mental health" staff[5] believed that Plaintiff needed the Therapeutic Control Program ("TDU").[6] [Doc. 1 at 8]. However, rather than being placed

---

v. Richmond City Police Dep't, 947 F.2d 733 (4th Cir. 1991) (applying the prisoner mailbox rule to a § 1983 case).

[4] Plaintiff does not identify her mental health diagnosis.

[5] Plaintiff does not identify the individual(s) who made this determination.

[6] Plaintiff appears to refer to the Therapeutic Diversion Unit, which she describes as "a status that recognizes the need for security as well as the need for treatment of mental illness" in which "the inmate conditions of confinement as well as control status may be altered using established procedures outlined in this policy and developed and adopted by the facilities inpatient/residential mental health services." [Doc. 1 at 8].

2

in TDU, Plaintiff was placed on intensive control ("ICON") which exacerbated her mental health condition.[7] Plaintiff alleges that she informed Defendants Lassiter, Grand, Copple, and Young of these issues by letters dated October 14, 2018, and that they too disregarded her medical and mental health needs. Plaintiff seeks declaratory judgment, injunctive relief, compensatory and punitive damages, fees and costs, a jury trial, and all other relief the Court deems just and equitable.

Defendant Haynes filed a Motion to Dismiss the Complaint [Doc. 28], arguing that he was not involved in Plaintiff's ICON housing assignment or mental health treatment in any way and that Plaintiff's only claims with respect to him relate to the provision of physical therapy following Plaintiff's foot surgery for a bone spur. Defendant Haynes argues that Plaintiff failed to state a claim for medical malpractice with respect to the provision of physical therapy because she failed to satisfy the requirements of Rule 9(j) of the North Carolina Rules of Civil Procedure; that the Complaint alleges no

---

[7] Plaintiff claims that inmates assigned to ICON who have been diagnosed with mental illness are evaluated by mental health staff to determine if the inmate meets the requirements for TDU. If so, mental health staff at the facility designated for TDU housing are contacted and, if the TDU staff agree, the inmate is transferred as soon as possible. If there is a disagreement about the appropriateness of a case, the director of mental health services makes the final decision. [Doc. 1 at 9].

3

facts to apply *res ipsa loquitur*; and that Plaintiff has failed to state an Eighth Amendment claim.

Defendants Lassiter, Grand, Copple, and Young[8] filed a Motion to Dismiss [Doc. 31], arguing that they are supervisory Defendants; that Plaintiff failed to exhaust her administrative remedies; that Plaintiff's official capacity claims are barred by sovereign immunity; that her individual capacity claims are barred by qualified immunity; and that Plaintiff's claims for injunctive relief are moot.

The Court informed Plaintiff of the opportunity to respond to Defendants' Motions to Dismiss and cautioned her that failing to respond to Defendants' Motions may result in the Court granting the relief that Defendants seek. [Docs. 30, 35]. However, Plaintiff has not filed a response and the time to do so has expired.

## II. STANDARD OF REVIEW

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

---

[8] Because Defendant Young has now responded to the Complaint, his Motion for an Extension of Time will be denied as moot.

To be "plausible on its face," a plaintiff must demonstrate more than "a sheer possibility that a defendant has acted unlawfully." Id.

In reviewing the Complaint, the Court must accept the truthfulness of all factual allegations but is not required to assume the truth of "bare legal conclusions." Aziz v. Alcolac, Inc., 658 F.3d 388, 391 (4th Cir. 2011). "The mere recital of elements of a cause of action, supported only by conclusory statements, is not sufficient to survive a motion made pursuant to Rule 12(b)(6)." Walters v. McMahen, 684 F.3d 435, 439 (4th Cir. 2012); see also Twombly, 550 U.S. at 555 (A complaint containing mere "labels and conclusions" or a "formulaic recitation of the elements of a cause of action will not do.").

Determining whether a complaint states a plausible claim for relief is "a context-specific task," Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009), which requires the Court to assess whether the factual allegations of the complaint are sufficient "to raise the right to relief above the speculative level," Twombly, 550 U.S. at 555. As the Fourth Circuit has explained:

> To satisfy this standard, a plaintiff need not forecast evidence sufficient to prove the elements of the claim. However, the complaint must allege sufficient facts to establish those elements. Thus, while a plaintiff does not need to demonstrate in a complaint that the right to relief is probable, the complaint must advance the plaintiff's claim across the line from conceivable to plausible.

5

Walters, 684 F.3d at 439 (citations and internal quotation marks omitted).

## III. DISCUSSION

### A. Exhaustion

The Prison Litigation Reform Act ("PLRA") requires a prisoner to exhaust her administrative remedies before filing a § 1983 action. 42 U.S.C. § 1997e(a). The PLRA provides, in pertinent part, that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Id. PLRA's exhaustion requirement applies to all inmate suits about prison life. Porter v. Nussle, 534 U.S. 516, 532 (2002). There is "no question that exhaustion is mandatory under PLRA and that unexhausted claims cannot be brought in court." Jones v. Bock, 549 U.S. 199, 211 (2007) (citing Porter, 534 U.S. at 524). The PLRA requires "proper" exhaustion, which means "using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)." Woodford v. Ngo, 548 U.S. 81, 90 (2006) (quoting Pozo v. McCaughtry, 286 F.3d 1022, 1024 (7th Cir. 2002)). The exhaustion of administrative remedies must occur before a civil action is commenced. Porter, 534 U.S. at 516. A prisoner may not exhaust her administrative remedies during the pendency of a § 1983

6

action. Germain v. Shearin, 653 F. App'x 231, 234 (4th Cir. 2016); French v. Warden, 442 F. App'x 845, 846 (4th Cir. 2011).

NCDPS has established a three-step procedure governing submission and review of inmate grievances, which it refers to as the Administrative Remedies Procedure ("ARP"). N.C. Gen. Stat. § 148-11A; Moore v. Bennette, 517 F.3d 717, 721 (4th Cir. 2008); see Fed. R. Civ. P. 201 (addressing judicial notice). Under the ARP, an inmate must submit a grievance at step one and then may appeal an unfavorable decision from step one at steps two and three. Id. A decision at step three of the ARP exhausts the prisoner's remedies under the PLRA.

"The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." Jones, 549 U.S. at 218. NCDPS's ARP does not require a plaintiff to name each defendant in her grievance so long as the grievance gives the defendant fair notice of the claim. See Moore, 517 F.3d at 729. However, if the grievance fails to give prison authorities fair notice of, and the opportunity to address, the problem that will later form the basis of the suit against that defendant, dismissal of that defendant is appropriate. See Davidson v. Davis, No. 3:13-cv-590-FDW, 2015 WL 996629 at *3

7

(W.D.N.C. Mar. 6, 2015) (citing Johnson v. Johnson, 385 F.3d 503, 516-17 (5th Cir. 2004)).

Plaintiff alleges in her Complaint that she exhausted her administrative remedies with regards to the delays in receiving physical therapy and placing her in the TDU program, and she attached to her Complaint records that purport to establish this exhaustion. However, Plaintiff has attached to the Complaint only one grievance that was exhausted to step three of the ARP. The Step Three Response dated September 12, 2018, indicates that Bed Management is working on a transfer so that Plaintiff can receive physical therapy, that transferring Plaintiff is difficult due to Plaintiff's ICON status and will occur when placement is found, and that Plaintiff has several upcoming medical appointments. [Doc. 1-1 at 11]. Plaintiff alleges that she made Defendants Lassiter, Grand, Copple, and Young aware that she was being denied physical therapy and admission into the TDU program by letter on October 14, 2018, but that these Defendants disregarded these issues.

Although the NCDPS's APR does not require a plaintiff to name each of the defendants in a grievance, Defendants Lassiter, Grand, Copple, and Young are entitled to dismissal of this action because Plaintiff failed to fairly present any claims against them in her exhausted grievance. Based on the allegations in the grievances Plaintiff has provided, there is no reason to

believe that Plaintiff was alleging that these Defendants engaged in a pattern or practice of denying adequate mental or medical health care or denying transfers to other prisons where such services are available. See Section C, *infra.* Nor is there any allegation that these Defendants or any other supervisors at the prison knew or should have known about these issues. Id. Rather, Plaintiff merely complains that she notified these Defendants about the alleged issues with physical therapy and TDU in letters on October 14, 2018, just two days before she filed the Complaint in this matter.[9] Therefore, even if the letters could somehow be construed as Step One grievances, there was inadequate time for Plaintiff to fully exhaust the three-step ARP before she filed the Complaint two days later. Thus, nothing in Plaintiff's exhausted grievance gave prison officials notice and the opportunity to address Plaintiff's claims against Defendants Lassiter, Grand, Copple, and Young before Plaintiff brought this action. Finally, the Court observes that Plaintiff has failed to respond to the Motion to Dismiss even though the Court informed Plaintiff of the likelihood that Defendants would be granted the relief they seek should Plaintiff fail to respond. Defendants Lassiter, Grand, Copple, and Young will therefore be dismissed from this

---

[9] Defendants allege that the October 14 letters were sent 11 days after the Complaint was filed. However, pursuant to the prisoner mailbox rule, the Complaint is deemed to have been filed just two days after Plaintiff mailed her letters.

action due to Plaintiff's failure to exhaust the available administrative remedies with regards to her claims against them.[10]

B. **Sovereign Immunity**

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The Amendment renders "an unconsenting State … immune from suits brought in federal courts by her own citizens as well as by citizens of another state" even if a State is not named as a party to the action. Edelman v. Jordan, 415 U.S. 651, 663 (1974); same Fauconier v. Clarke, 2020 WL 4046025, at *8 (4th Cir. July 20, 2020). This immunity may be abrogated by an appropriate act of Congress. See Bd. of Trs. of Univ. of

---

[10] Unexhausted claims of this type are usually dismissed without prejudice. See Dillard v. Anderson, 2010 WL 9553022, at *2 (W.D.N.C. Sept. 6, 2010). However, in the instant case, Defendants are entitled to dismissal on additional grounds. See generally Carter v. Norfolk Community Hosp. Assoc., 761 F.2d 970, 974 (4th Cir. 1985) ("A district court's dismissal under Rule 12 (b) (6) is, of course, with prejudice unless it specifically orders dismissal without prejudice. That determination is within the district court's discretion."); see Hong Tang v. Univ. of Baltimore, 782 F. App'x 254, 255 (4th Cir. 2019) ("dismissal for failure to state a claim or for qualified immunity would be with prejudice"); Allen v. Cooper, 895 F.3d 337, 358 (4th Cir. 2018), *aff'd* 140 S. Ct. 994 (2020) (dismissing claims on the basis of qualified and legislative immunity with prejudice); McLean v. United States, 566 F.3d 391, 396 (4th Cir. 2009) ("Courts have held that, unless otherwise specified, a dismissal for failure to state a claim under Rule 12(b)(6) is presumed to be both a judgment on the merits and to be rendered with prejudice."), *abrogated on other grounds by* Lomax v. Ortiz-Marquez, 140 S. Ct. 1721 (2020).

Ala. v. Garrett, 531 U.S. 356, 363 (2001).  However, "§ 1983 creates no remedy against a state." Arizonans for Official English v. Arizona, 520 U.S. 43, 69 (1997); see also Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989) (states are not "persons" amenable to suit under § 1983).  The State of North Carolina has done nothing to waive its immunity.  See Bright v. McClure, 865 F.2d 623, 626 (4th Cir. 1989); McConnell v. Adams, 829 F.2d 1319, 1328 (4th Cir. 1987).

Plaintiff's claims for damages against Defendants in their official capacities are barred because these are claims against the State itself.[11] Accordingly, Defendants Lassiter, Grand, Copple, and Young's Motion to Dismiss on this issue will be granted and the claims for damages against Haynes and Judd for damages in their official capacities will be dismissed *sua sponte*.[12]

---

[11] Plaintiff's official-capacity claims for injunctive relief are not barred by sovereign immunity because "official-capacity actions for prospective relief are not treated as actions against the State." Will, 491 U.S. at 93 (quoting Graham, 473 U.S. at 167, n. 14). Defendants Lassiter, Grand, Copple and Young argue that Plaintiff's claims for injunctive relief are moot as Plaintiff has been transferred away from Lanesboro C.I.  See generally Williams v. Griffin, 952 F.2d 820 (4th Cir. 1991) (a prisoner's transfer moots a § 1983 request for declaratory and injunctive relief when the conditions of which the prisoner claims are unlikely to recur).  However, the Court cannot determine based on the record presently before it whether the alleged violations are ongoing or that the conditions of which the prisoner complains are unlikely to recur.

[12] An *in forma pauperis* proceeding shall be dismissed "at any time" if the court determines that the action is frivolous or malicious or fails to state a claim on which relief may be granted…." 28 U.S.C. § 1915(e)(2)(B)(i)-(ii).

11

### C. Eighth Amendment

Claims under 42 U.S.C. § 1983 based on an alleged lack of or inappropriate medical or mental health treatment fall within the Eighth Amendment's prohibition against cruel and unusual punishment. Estelle v. Gamble, 429 U.S. 97, 104 (1976); Buffington v. Baltimore Cnty., Md., 913 F.2d 113, 120 (4th Cir. 1990) ("A serious psychological impairment can qualify as [a serious] medical need."). To state a claim under the Eighth Amendment, a plaintiff must show a "deliberate indifference to serious medical needs" of the inmate. Id. "Deliberate indifference requires a showing that the defendants actually knew of and disregarded a substantial risk of serious injury to the detainee or that they actually knew of and ignored a detainee's serious need for medical care." Young v. City of Mt. Ranier, 238 F.3d 567, 575-76 (4th Cir. 2001) (citations omitted). "To establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990).

Allegations that might be sufficient to support negligence and medical malpractice claims do not, without more, rise to the level of a cognizable § 1983 claim. Estelle, 429 U.S. at 106; Grayson v. Peed, 195 F.3d 692, 695

12

(4th Cir. 1999) ("Deliberate indifference is a very high standard—a showing of mere negligence will not meet it."). To be found liable under the Eighth Amendment, a prison official must know of and consciously or intentionally disregard "an excessive risk to inmate health or safety." Farmer v. Brennan, 511 U.S. 825, 837 (1994); Johnson v. Quinones, 145 F.3d 164, 167 (4th Cir. 1998). "[E]ven if a prison doctor is mistaken or negligent in his diagnosis or treatment, no constitutional issue is raised absent evidence of abuse, intentional mistreatment, or denial of medical attention." Stokes v. Hurdle, 393 F. Supp. 757, 762 (D. Md. 1975), *aff'd*, 535 F.2d 1250 (4th Cir. 1976).

Plaintiff alleges that Defendants were deliberately indifferent to her serious medical and mental health needs because her physical therapy and TDU placement were delayed. Assuming *arguendo* that Plaintiff has identified objectively sufficiently serious medical and mental health conditions, she has failed to adequately allege that any of the Defendants were deliberately indifferent to those needs.

Plaintiff alleges that Defendants Haynes and Judd were the doctor and psychologist who provided her care, respectively. Plaintiff conclusively alleges that these Defendants were deliberately indifferent to her need for physical therapy and placement in a TDU program. However, Plaintiff has failed to adequately allege that Defendants Haynes and Judd were aware of

facts from which the inference could be drawn that a substantial risk of serious harm existed and that they drew that inference. Therefore, Defendant Haynes' Motion to Dismiss on this issue will be granted and the Court will dismiss the deliberate indifference claim against Defendant Judd *sua sponte*.

Further, Plaintiff alleges that Defendants Lassiter, Grand, Copple, and Young were notified of the physical therapy and TDU issues by letter and failed to ensure that Plaintiff received care. A state official can be named in a § 1983 suit in three ways: in his personal capacity, his official capacity, or in a more limited way, his supervisory capacity. King v. Rubenstein, 825 F.3d 206, 223–24 (4th Cir. 2016). For personal liability, "it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right." Kentucky v. Graham, 473 U.S. 159, 166 (1985). In an official-capacity suit, however, "[m]ore is required:" the suit is "treated as a suit against the entity," which must then be a "'moving force' behind the deprivation," King, 825 F.3d at 223 (quoting Polk County v. Dodson, 454 U.S. 312, 326 (1981)); thus, the entity's "'policy or custom' must have played a part in the violation of federal law," id. (quoting Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 694 (1978)).

Plaintiff does not allege that the supervisory Defendants were personally involved in her medical or mental health care; that any policy or custom was involved in the alleged delay in care; or that any of the supervisory Defendants were deliberately indifferent to a subordinate's conduct that posed a pervasive or unreasonable risk of constitutional injury. Accordingly, Plaintiff has failed to state a deliberate indifference claim against the supervisory defendants and their Motion to Dismiss will be granted on this issue.

### D. Qualified Immunity

Qualified immunity "shields police officers who commit constitutional violations from liability when, based on clearly established law, they could reasonably believe that their actions were lawful." Estate of Jones by Jones v. City of Martinsburg, W. Va., 961 F.3d 661, 667 (4th Cir. 2020), *as amended* (June 10, 2020) (internal citation omitted). To determine whether qualified immunity applies, the courts conduct a two-step inquiry, in either order: "(1) whether a constitutional violation occurred; and (2) whether the right was clearly established at the time of the violation…." Booker v. S. Carolina Dep't of Corr., 855 F.3d 533, 538 (4th Cir. 2017).

Defendants Lassiter, Grand, Copple, and Young assert that they are entitled to qualified immunity because they did not violate any of Plaintiff's

15

Case 3:18-cv-00575-MR    Document 37    Filed 08/10/20    Page 15 of 17

clearly established constitutional or statutory rights. Plaintiff does not attempt to refute this assertion and the Court has found that no Eighth Amendment violation occurred. Therefore, the Court finds that Plaintiff's claims against these Defendants are also subject to dismissal because the Defendants are entitled to qualified immunity.

E.  **State Law Claims**

Rule 9(j) of the North Carolina Rules of Civil Procedure requires a plaintiff asserting a medical malpractice action[13] to obtain expert review of "the medical care and all medical records" before filing a lawsuit by a medical expert who is willing to testify that the medical care did not comply with the applicable standard of care. N.C. Gen. Stat. § 1A-1, Rule 9(j). Failure to comply with Rule 9(j) is ground for dismissal of a state medical malpractice claim filed in federal court. See, e.g., Estate of Williams–Moore v. Alliance One Receivables Mgmt. Inc., 335 F.Supp.2d 636, 649 (M.D.N.C. 2004); Frazier v. Angel Med. Ctr., 308 F.Supp.2d 671, 676-77 (W.D.N.C. 2004).

To the extent that Plaintiff attempts to assert North Carolina medical negligence claims against Defendants Haynes and Judd, she has failed to

---

[13] The North Carolina General Statutes defines a "[m]edical malpractice action" as "[a] civil action for damages for personal injury or death arising out of the furnishing or failure to furnish professional services in the performance of medical, dental, or other health care provider." N.C. Gen. Stat. 90-21.11(2)a.

16

Case 3:18-cv-00575-MR    Document 37    Filed 08/10/20    Page 16 of 17

comply with North Carolina's legal requirements for pursuing such claims. Therefore, Defendant Hayne's Motion to Dismiss Plaintiff's medical negligence claim will be granted and her medical negligence claim against Defendant Judd will be dismissed *sua sponte*.

## IV. CONCLUSION

For the reasons stated herein, the Court will grant Defendants' Motions to Dismiss and the claims against Defendant Judd will be dismissed *sua sponte.*

**IT IS, THEREFORE, ORDERED** that Defendants' Haynes, Lassiter, Copple, Grand, and Young's Motions to Dismiss [Docs. 28, 31] are **GRANTED** and Plaintiff's claims against Defendants Haynes, Lassiter, Copple, Grand, Young, and Judd are **DISMISSED**.

**IT IS FURTHER ORDERED** that Defendant Young's Motion for Extension of Time to Answer [Doc. 25] is **DENIED** as moot.

The Clerk is directed to terminate this action.

**IT IS SO ORDERED.**

Signed: August 10, 2020

Martin Reidinger
Chief United States District Judge

17

Case 3:18-cv-00575-MR   Document 37   Filed 08/10/20   Page 17 of 17